**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-4622
Facsimile: (415) 801-7389

**COOLEY LLP**
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

PHYLLIS NICHOLS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 4:24-cv-02914-JSW

**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

Date: October 11, 2024
Time: 9:00 a.m.
Videoconference

Action Filed: April 9, 2024
Honorable Jeffrey S. White

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 11, 2024, at 9:00 a.m., before the Honorable Jeffrey S. White of the United States District Court for the Northern District of California, via videoconference, Defendant Meta Platforms, Inc., will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the complaint with prejudice.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

Should the complaint be dismissed under Rule 12(b)(6) for failure to state a claim?

# TABLE OF CONTENTS

Page


INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

- I. The Complaint Fails to State a Claim under GIPA. .......... 5
  - A. The Complaint Fails To Plausibly Allege That Meta "Compelled" Any Disclosure. .......... 6
  - B. The Complaint Fails To Allege Compelled Disclosure Of Protected Information. .......... 9
  - C. Plaintiff Does Not Have a Right of Action to Sue Meta for Compelled Disclosure. .......... 10
- II. The GIPA Claim is Untimely. .......... 11
- III. Plaintiff Agreed to Apply California Law. .......... 12

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 4, 5, 10

*Bridges v. Blackstone, Inc.*,
2022 WL 2643968 (S.D. Ill. July 8, 2022), *aff'd*, 66 F.4th 687 (7th Cir. 2023) .... 5, 6, 7, 8, 9

*Copley Press, Inc. v. Administrative Office of Courts*,
271 Ill. App. 3d 548 (1995) .... 7

*Crocker v. Revolutionary Communist Progressive Labor Party*,
178 Ill. App. 3d 401 (1998) .... 7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .... 12

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .... 13

*Los Angeles Police Protective League v. City of Los Angeles*,
35 Cal. App. 4th 1535 (1995) .... 6

*In re Nexus 6P Prod. Liab. Litig.*,
293 F. Supp. 3d 888 (N.D. Cal. 2018) .... 12

*Palomino v. Facebook, Inc.*,
2017 WL 76901 (N.D. Cal. Jan. 9, 2017) .... 12, 13

*People v. Navarroli*,
121 Ill. 2d 516 (1988) .... 7

*People v. Resendez*,
12 Cal. App. 4th 98 (1993) .... 6

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) .... 5

*Soarus LLC v. Bolson Materials Int'l Corp.*,
905 F.3d 1009 (7th Cir. 2018) .... 8

*State v. Hartman*,
27 Wash. App. 2d 952 (2023) .... 9

*Tims v. Black Horse Carriers, Inc.*,
2023 IL 127801 (2023) .... 11

*Wash. Mut. Bank, FA v. Superior Ct.*,
24 Cal. 4th 906 (2001) .......... 12

*Washington v. Meachum*,
680 A.2d 262 (Conn. 1996) .......... 8

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 12, 13

**Statutes**

410 ILCS 513/5 .......... 4, 10

410 ILCS 513/15(a) .......... 11

410 ILCS 513/30(a) .......... 1, 5, 6, 7, 9, 10, 11

735 ILCS 5/8-803 .......... 7

735 ILCS 5/13-201 .......... 11

Cal. Civ. Code § 56.10(b) .......... 7

Cal. Civ. Code § 56.181 .......... 13

45 C.F.R. §§ 164.103, 164.512 .......... 7

**Other Authorities**

90th Gen. Assembly, H.R. Tr. at 183-84 (Apr. 15, 1997),
https://www.ilga.gov/house/transcripts/htrans90/t041597.pdf .......... 10

GEDmatch, *Is GEDmatch Safe?*, https://www.gedmatch.com/privacy-security/ .......... 10

Leslie E. Wolf et al., *The Web of Legal Protections for Participants in Genomic Research*, 29 Health Matrix 1 (2019) .......... 10

*Merriam-Webster's Dictionary of Law* (2d ed. 2016) .......... 6

**Rules**

Ill. R. Att'y Regis. & Dis. Com. Rule 251 .......... 7

Ill. R. S. Ct. 204(a)-(b) .......... 7

**Treatises**

*Black's Law Dictionary* (11th ed. 2019) .......... 6

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**INTRODUCTION**

Plaintiff alleges that she shared her genetic-test results with GEDmatch, a company that allows its users to upload genetic-test results from other companies to GEDmatch.com and then compare the information to other profiles in GEDmatch's database. Compl. ¶¶ 44, 71. She further claims that GEDmatch violated the Illinois Genetic Information Privacy Act ("GIPA") by disclosing to Meta Platforms, Inc. ("Meta") the fact that she uploaded those results to GEDmatch's online database. GIPA prohibits entities that obtain certain specified genetic-test information from disclosing that information; it also shields those entities from being "compelled to disclose" the information. 410 ILCS 513/30(a); *see* Compl. ¶¶ 89–100. Although plaintiff acknowledges that it was GEDmatch who "disclose[d]" her information, she does not assert any claim against GEDmatch. Instead, she sued Meta, claiming that Meta somehow "compelled" GEDmatch's disclosure in violation of GIPA (Compl. ¶ 20) because GEDmatch sent the information via the Meta Pixel—Meta's version of a commonplace internet-analytics tool that Meta makes publicly available to web developers for free. That novel claim is meritless. Plaintiff does not plausibly allege Meta compelled GEDmatch to disclose *any* information, let alone the kind of confidential information covered by GIPA, by making a free software tool publicly available. To the contrary, Meta prohibits developers from sending sensitive information through the Pixel. Plaintiff's claim should be dismissed for three separate reasons.

*First*, even assuming GIPA applies, plaintiff fails to state a claim under it for several independent reasons. Most obviously, her complaint does not allege that Meta "compelled" GEDmatch to disclose any information. Instead, plaintiff alleges that GEDmatch voluntarily installed the Pixel on its website. As Meta cannot plausibly be described as compelling alleged disclosures that GEDmatch unilaterally chose to make, plaintiff's claim is foreclosed as a matter of law. Additionally, the only fact GEDmatch allegedly disclosed to Meta—that plaintiff used GEDmatch's website to upload *someone's* DNA test—is not protected under GIPA, which bars disclosure only of the identity of the person on whom a genetic test is performed and genetic-test results that reveal that identity. And finally, even if plaintiff had plausibly alleged a GIPA violation, GIPA would not give her a right of action *against Meta* for GEDmatch's alleged disclosure. GIPA prohibits an entity entrusted with privileged

information from disclosing it and creates a remedy against that entity if it nevertheless discloses information unlawfully. The law does not permit a privilege holder to sue third parties for allegedly demanding privileged information.

*Second*, again assuming GIPA provides the relevant legal standards, plaintiff's claim is untimely. Illinois law sets a one-year statute of limitations for privacy-based claims. Plaintiff allegedly used GEDmatch in 2021, but waited until 2024 to bring a claim.

*Third*, GIPA does not even apply in this case. As a Facebook user, plaintiff agreed to the California choice-of-law provision in Meta's Terms of Service, which forecloses application of Illinois law.

## BACKGROUND

### A. Meta's Pixel, Terms, And Disclosures

***Meta Pixel.*** This case centers on GEDmatch's alleged use of the Meta Pixel, Meta's version of a free, common internet-analytics tool offered by numerous companies and widely used by third-party web developers. Meta's Pixel is a free, publicly available tool that developers "like GEDmatch can integrate into their website" to measure activity on their platforms; Meta then analyzes this activity and provides information to the web developer that the developer can use to improve its online products and services. Compl. ¶¶ 49–61.[1]

When a developer chooses to use the Pixel, the developer, not Meta, decides which online activities to measure and what data to send to Meta. *Id.* ¶¶ 48–52. Meta offers a "menu of 'standard events'" from which a developer can "choose which types of content are tracked" on its platform. *Id.* ¶ 50 (citing *About Standard and Custom Webpage(s) Events*, Facebook, https://www.facebook.com/business/help/964258670337005?id=1205376682832142). Web developers can then use information about how users interact with their websites to determine how best to market and improve their online services. *Id.* ¶¶ 18, 20, 48–50, 54, 59–61. For example, "if a consumer visits a retailer's

[1] Plaintiff also refers to another tool—the Conversions API, or "CAPI"—but the complaint focuses on the Pixel and does not allege any facts about CAPI that would change the analysis for purposes of plaintiff's GIPA claim. *See* Compl. ¶¶ 15–20, 24, 41, 49, 94.

webpage and places an item in their shopping cart without purchasing it," the developer may be able to serve an ad to that consumer on Facebook for that item. *Id.* ¶ 63.

***Meta's Restrictions On Third-Party Use Of The Pixel.*** Web developers that choose to use the Pixel must agree to Meta's Business Tools Terms and Commercial Terms, which require them to "have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use of Business Tool Data." Meta's Request for Judicial Notice ("RJN") Ex. 1 at 2; Ex. 3 at 2. Meta prohibits developers from sharing data that they "know or reasonably should know . . . includes health . . . or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." Ex. 1 at 2. They also must "represent and warrant that [they] have provided robust and sufficiently prominent notice to users regarding the Business Tool Data collection, sharing and usage," including a "clear and prominent notice on each web page where [Meta] pixels are used that links to a clear explanation [of] . . . how users can opt-out of the collection and use of information for ad targeting." *Id.* at 4–5.

***Meta's Disclosures To Facebook Users***. When Facebook users—including plaintiff, who alleges that she "has an active Facebook account," Compl. ¶ 73—first sign up for a Facebook account, they must agree to Meta's Terms of Service, which govern the "use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software" Meta offers. RJN Ex. 2 at 1. Among other things, Facebook users agree that any claim, cause of action, or dispute arising out of or relating to those Terms or to their use of Meta's Products "shall be resolved exclusively" in state or federal California courts, and "that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions." *Id.* at 9. Facebook users also agree to Meta's Data Policy, which explains that Meta "receive[s] data from" third parties through the Pixel, including about "websites you visit" and "how you use their services." RJN Ex. 4 at 3.

**B. Plaintiff's Allegations**

On April 9, 2024, plaintiff filed this putative class action against Meta in California Superior Court; Meta thereafter removed the case to this Court. Dkt. 1. Plaintiff's suit stems from her use of

GEDmatch, a company that allows users to submit genetic (and other) information online to explore their family history. Compl. ¶¶ 11, 42–43. GEDmatch is not a genetic-testing company; instead, GEDmatch users can upload genetic-test results (about themselves or others) from other companies to GEDmatch.com and then compare the information to other profiles in GEDmatch's database. *Id.* ¶ 44.

Plaintiff alleges that the Meta Pixel "operates on GEDmatch.com" pursuant to a "written agreement between Defendant and GEDmatch." *Id.* ¶ 46. She claims that she uploaded a DNA file to GEDmatch in 2021, and that GEDmatch—through the Pixel—disclosed to Meta "the fact that she uploaded her DNA file and her identity." *Id.* ¶¶ 71, 75. The complaint does not allege any facts showing that GEDmatch disclosed to Meta that plaintiff herself was the subject of the genetic test. *Id.*

Plaintiff's complaint asserts a single cause of action under an Illinois statute, GIPA, which prohibits entities that obtain genetic information from disclosing that information and also shields those entities from third-party efforts to compel disclosure. *See id.* ¶¶ 89–100. Through GIPA, the legislature sought to encourage "valuable" genetic testing by facilitating the "confidential nondiscriminatory use of genetic testing information." 410 ILCS 513/5. "No person *may disclose or be compelled to disclose* the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." *Id.* 513/30(a) (emphasis added). Moreover, except for identification purposes in criminal investigations or prosecutions and in a few circumstances involving public health, genetic-testing information shall not be "admissible as evidence, nor discoverable in any action of any kind in any court, or before any tribunal, board, agency, or person." *Id.* 513/15(b); *see id.* 513/30(b). The statute authorizes awards of actual damages or of statutory damages—$2,500 for negligent violations, and $15,000 for intentional or reckless violations. *Id.* 513/40(a).

## LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must separate legal conclusions—which are disregarded—from factual allegations. *Id.* at 678–79. The remaining allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A claim also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

**ARGUMENT**

Plaintiff asserts a single claim under GIPA, which provides that "[n]o person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30(a). Plaintiff's GIPA claim fails for each of three independent reasons.

*First*, even assuming GIPA applies, plaintiff has not stated any claim against Meta under GIPA. She does not allege that Meta "disclose[d]" anything, and she fails to allege any facts showing that Meta "compelled" GEDmatch to disclose any information simply by allowing GEDmatch to use a free software tool that Meta makes publicly available. *Id.* Nor, in any event, does plaintiff allege that GEDmatch disclosed "the identity of any person *upon whom a genetic test is performed*" or "the results of a genetic test"; instead, she alleges only that GEDmatch disclosed that she uploaded test results to its website, without disclosing whose results they were. *Id.* (emphasis added). And even if plaintiff had plausibly alleged any GIPA violation, GIPA does not give plaintiff a right of action against Meta.

*Second*, plaintiff's claim is also barred by Illinois's one-year statute of limitations: she alleges she used GEDmatch in 2021, but did not bring suit until 2024.

*Third*, this rarely litigated Illinois statute does not apply here because plaintiff agreed that any disputes with Meta would be governed by California law.

For any and all of these reasons, plaintiff's complaint fails to state a claim and should be dismissed with prejudice.

## I. The Complaint Fails to State a Claim under GIPA.

The complaint "fail[s] to state a claim" under GIPA for several reasons. *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). *First*, plaintiff does not plausibly allege that Meta "compelled" any disclosure here. *Second*, the information that plaintiff alleges GEDmatch was compelled to disclose is not protected under the statute. *Finally*, even if plaintiff plausibly alleged a GIPA violation, GIPA would not give plaintiff a cause of action to sue Meta for GEDmatch's alleged disclosure.

**A. The Complaint Fails To Plausibly Allege That Meta "Compelled" Any Disclosure.**

Plaintiff does not allege that Meta "disclose[d]" any of her information—instead, she alleges that GEDmatch did so. 410 ILCS 513/30(a); *see, e.g.*, Compl. ¶¶ 2, 20, 65, 71. As for Meta, plaintiff's theory is that Meta violated GIPA by supposedly "compell[ing]" GEDmatch's disclosure by entering an agreement permitting GEDmatch to use the Pixel on its website. 410 ILCS 513/30(a).

But the complaint does not plausibly allege that Meta "compelled" GEDmatch to disclose any information, let alone the kind of genetic-testing information GIPA covers. *See, e.g.*, *Bridges v. Blackstone, Inc.*, 2022 WL 2643968, at *4 (S.D. Ill. July 8, 2022), *aff'd*, 66 F.4th 687 (7th Cir. 2023). Meta's alleged "agreement" with GEDmatch—a standard contract that every web developer who uses the Pixel agrees to—merely permitted GEDmatch to use the Pixel to send information about its users' online activities. Web developers like GEDmatch, not Meta, decide whether to use the Pixel and, if so, which data to send to Meta. Meta never *compelled* GEDmatch to use the Pixel or to send Meta anything at all—much less information protected by GIPA. Far from compelling disclosure of sensitive data, Meta forbids it. Its Business Tools Terms—which are part of Meta's agreement with all web developers that use the Pixel—expressly prohibited GEDmatch from sending Meta sensitive or protected information. *See* RJN Ex. 3 at 2; *supra* at 3. Meta cannot plausibly be described as compelling alleged disclosures that were entirely up to GEDmatch.

Labeling GEDmatch's voluntary, unilateral alleged disclosures "compelled" (Compl. ¶ 1) contradicts that word's plain meaning. "An act which is compelled is one that is commonly recognized as having been *forced*, without the possibility of denying or resisting." *Los Angeles Police Protective League v. City of Los Angeles*, 35 Cal. App. 4th 1535, 1541 (1995) (emphasis added); *see People v. Resendez*, 12 Cal. App. 4th 98, 108 (1993) ("compel" "is commonly understood to carry with it a connotation of irresistible force"). "Compel" bears that same meaning in the law. Compel, *Black's Law Dictionary* (11th ed. 2019) ("To cause or bring about by force, threats, or overwhelming pressure."); Compel, *Merriam-Webster's Dictionary of Law* (2d ed. 2016) ("[T]o cause to do or occur by overwhelming pressure and esp. by authority or law."). For example, a motion to "compel" discovery is a "request that the court force the party's opponent to respond to the party's discovery request"; it is not an invitation to share information voluntarily. Motion to Compel Discovery, *Black's Law Dictionary*

(11th ed. 2019).

Illinois law consistently uses the term "compel" in the same way—to refer to the use of legal force through a court order or other court-sanctioned process. *See, e.g.*, Ill. R. Att'y Regis. & Dis. Com. Rule 251 ("Neither the Administrator nor the respondent shall be compelled to disclose work product in the course of discovery . . . ."); *Crocker v. Revolutionary Communist Progressive Labor Party*, 178 Ill. App. 3d 401, 405 (1998) (reversing order compelling defendant to answer deposition questions because a "person cannot be compelled to disclose his or her political association"); *Copley Press, Inc. v. Administrative Office of Courts*, 271 Ill. App. 3d 548, 549–50 (1995) (lawsuit under Freedom of Information Act seeking order "compelling disclosure of documents" held by agency). For example, parties in Illinois can seek an order or subpoena to "compel limited discovery before filing a lawsuit"; to "compel the appearance of the deponent" or "compel the giving of testimony"; to "compel[] an answer or compliance with" a discovery demand; and to "compel[] appearances of witnesses at trial." Ill. R. S. Ct. 204(a)-(b), 214 (Committee Comment 1995), 219, 224 (Committee Comment 1989), 237. And Illinois law routinely protects confidential information from "compelled" disclosure in judicial or administrative proceedings. *E.g.*, 735 ILCS 5/8-803 (clergy-penitent privilege); *id.* 5/8-912 (interpreter-deaf privilege); *id.* 5/8-803.5 (union-member privilege). Illinois is no outlier. Federal and other States' laws use the term in the same familiar way. *See, e.g.*, 45 C.F.R. §§ 164.103, 164.512 (federal HIPAA protections providing for disclosure of health information "required by law," meaning a mandate that "compels" disclosure, like a court order or subpoena); Cal. Civ. Code § 56.10(b) (California law regarding "compelled" disclosure of medical information referring to disclosures "required by law," such as by "court order" or "subpoena").

Thus, when GIPA provides that no person or entity shall be "compelled" to disclose the identity of certain persons, 410 ILCS 513/30(a), it plainly contemplates "something more than passive receipt of information, and something more than merely 'asking' or 'requesting' action or obtaining information." *Bridges*, 2022 WL 2643968, at *4; *see also, e.g.*, *People v. Navarroli*, 121 Ill. 2d 516, 525–26 (1988) ("The defendant does not . . . state that the police *compelled him to disclose* information . . . . The record suggests only that the defendant *voluntarily provided* the police with information . . . in the hope of obtaining favorable treatment . . . ." (emphases added)). The Connecticut Supreme Court

has construed a nearly identically worded law the same way. *Washington v. Meachum*, 680 A.2d 262, 274–75 (Conn. 1996) (holding that prohibition in Conn. Gen. Stat. § 19a-583 on "compelled" disclosure of HIV information "is violated only where real physical or moral compulsion from an external source is placed on a person who has obtained" such information, and was not violated by prison's monitoring of inmates' phone calls in which inmates voluntarily disclosed such information).

Applying that straightforward rule, plaintiff fails to state a plausible compelled-disclosure claim under GIPA. Her complaint alleges nothing more than "passive receipt of information" by Meta that GEDmatch chose to send. *Bridges*, 2022 WL 2643968, at *4; *see, e.g.*, Compl. ¶¶ 13, 56, 94. The complaint alleges merely that Meta "encourages and promotes" use of the Pixel and offers it to web developers "free of charge." Compl. ¶¶ 48, 56. And "[s]ophisticated businesses are capable of protecting their own interests" in common-place, arms-length transactions. *Soarus LLC v. Bolson Materials Int'l Corp.*, 905 F.3d 1009, 1013 (7th Cir. 2018) (citation omitted). No web developer is required to use the Meta Business Tools. If a web developer chooses to do so, it is the developer that chooses which information it wants to send to Meta. *See supra* at 2; *see also, e.g.*, Compl. ¶ 48 (website developers "can" target customers using the Pixel); *id.* ¶¶ 49–51 (developers "*can* integrate" the Pixel); *id.* ¶ 56 (developers "*allow*[] Facebook to collect" users' website activity); *id.* ¶ 95 (GEDmatch agreed "to *permit* the disclosure of all web traffic and all user information") (emphases added). Moreover, far from "compelling" GEDmatch to disclose protected information, Meta *prohibited* GEDmatch and other developers from sharing "health" or other "sensitive" information, including information "defined as sensitive under applicable laws." RJN Ex. 1 at 2. Plaintiff does not plausibly allege that Meta "compelled" any disclosure of information.

The Seventh Circuit's recent decision in *Bridges* interpreting GIPA underscores this conclusion. *See* 66 F.4th at 689, *aff'g* 2022 WL 2643968. In that case, plaintiffs provided DNA data to Ancestry.com, and another company—Blackstone—then allegedly acquired Ancestry.com to obtain and then sell its data. 66 F.4th at 688–90. The plaintiffs sued Blackstone, alleging that "Blackstone compelled the disclosure of protected genetic information" in violation of GIPA "through the act of acquiring Ancestry." *Id.* at 689. The district court dismissed plaintiffs' GIPA claim because "any information received was voluntarily given." *Bridges*, 2022 WL 2643968, at *4; *see id.* at *5 ("[T]he

complaint does not allege or infer that Blackstone compelled Ancestry to take any action."). The Seventh Circuit affirmed. *Bridges*, 66 F.4th at 689. It held that the complaint did not adequately allege that Blackstone *compelled* disclosure of information through the acquisition, even if disclosing information was its ultimate purpose in acquiring Ancestry. *Id.* The Seventh Circuit could not "plausibly infer that a run-of-the-mill corporate acquisition, without more allegations about that transaction, results in a compulsory disclosure within the meaning" of GIPA. *Id.*

The same result follows *a fortiori* here. Plaintiff alleges only that GEDmatch chose to integrate a free, publicly available online analytics tool into its website. And GEDmatch itself decided what data to send. Those run-of-the-mill business choices were not "compelled" by Meta. *See* Compl. ¶¶ 11, 20, 57 (alleging that "thousands" of website developers enter into agreements with Meta to use the Pixel). Plaintiff has not plausibly alleged the central element of her compelled-disclosure claim.

**B. The Complaint Fails To Allege Compelled Disclosure Of Protected Information.**

Even if the complaint plausibly alleged compelled disclosure (and it does not), the complaint does not allege that Meta compelled disclosure of information that is *protected* by the statute. Under GIPA, no person may be compelled to disclose (1) "the identity of any person upon whom a genetic test is performed" or (2) the "results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30(a). But plaintiff's complaint fails to allege that GEDmatch was compelled to disclose either of these things to Meta.

Plaintiff does not allege that GEDmatch disclosed the results of any genetic test. And while plaintiff alleges that GEDmatch discloses its *users'* identities and website activities to Meta (Compl. ¶¶ 13, 75), plaintiff does not allege that GEDmatch discloses the identities of people "upon whom a genetic test is performed" (410 ILCS 513/30(a)). GEDmatch is simply a genealogy website through which users can upload the results of *anyone's* "genetic test (from a variety of companies or providers)"—their own, or someone else's—to compare results with other profiles that were uploaded to the GEDmatch database. Compl. ¶¶ 43–45. The complaint does not allege that GEDmatch users must upload the results of their *own* genetic tests, and individuals may upload other people's test results for any number of reasons. *See, e.g.*, *State v. Hartman*, 27 Wash. App. 2d 952, 955 (2023) ("In 2018, police enlisted . . . a DNA technology company[] to analyze the killer's DNA and to upload it into

GEDmatch . . . ."); Leslie E. Wolf et al., *The Web of Legal Protections for Participants in Genomic Research*, 29 Health Matrix 1, 3 (2019) (discussing "law enforcement's use of these genealogy databases," including use of GEDmatch to identify the "Golden State Killer").[2]

Nor does the complaint plausibly allege any facts showing that GEDmatch disclosed to Meta whether the test plaintiff uploaded was her own test or not. Disclosing the mere fact that a user uploaded *someone's* genetic test to the website does not disclose that the user is the person "upon whom a genetic test is performed," much less show that Meta compelled the disclosure of that information. 410 ILCS 513/30(a). Although plaintiff cursorily claims that Meta "compelled the disclosure of [her] communications with GEDmatch, including the fact that she uploaded her DNA file and her identity," Compl. ¶ 75, she alleges no facts showing that GEDmatch conveyed to Meta that the DNA file she uploaded pertained to plaintiff herself. That "[t]hreadbare recital[] of an element of [plaintiff's] cause of action" is legally insufficient and falls far "'short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Again, GEDmatch does not confine its users to uploading DNA files concerning themselves—that would frustrate its core family-lineage-tracing purpose. So it is immaterial for plaintiff to allege GEDmatch disclosed that she uploaded a genetic-test result to its database, without disclosing to Meta that plaintiff was actually the subject of the test. Plaintiff has not plausibly alleged anything more than that here.

### C. Plaintiff Does Not Have a Right of Action to Sue Meta for Compelled Disclosure.

Even if plaintiff had plausibly alleged a GIPA violation, her claim against Meta still would fail because GIPA does not permit plaintiff to sue Meta for GEDmatch's allegedly compelled disclosure. In enacting GIPA, the Illinois legislature recognized the value of genetic testing and tried to encourage more by facilitating the "confidential nondiscriminatory use of genetic testing information." 410 ILCS 513/5. As the bill's sponsor explained, genetic-testing information was "not confidential in Illinois," and doctors had been advising patients to avoid such tests because "[a]n employer or an insurance carrier can obtain that information without your knowledge or approval and could discriminate on employment or price or coverage." 90th Gen. Assembly, H.R. Tr. at 183-84 (Apr. 15, 1997),

---

[2] *See also* GEDmatch, *Is GEDmatch Safe?*, https://www.gedmatch.com/privacy-security/ (DNA kits in the database include those submitted by "users," by "law enforcement," and by other people).

https://www.ilga.gov/house/transcripts/htrans90/t041597.pdf.

GIPA thus prohibits entities in possession of "confidential and privileged" information (410 ILCS 513/15(a)) from disclosing it (*id.* 513/30(a)) and permits aggrieved individuals to sue those entities for wrongful disclosure (*id.* 513/40). *See id.* 513/35 ("No person to whom the results of a test have been disclosed may disclose the test results to another person except as authorized under this Act."). GIPA also shields those entities from demands to disclose this information (with certain exceptions), such as a request from law enforcement or a civil litigant. *See id.* 513/30(a) (providing "[n]o person may disclose *or be compelled to disclose*" protected information (emphasis added)); *see also, e.g.*, *id.* 513/30(b) (exempting entities from legal demands under the state's Freedom of Information Act); *id.* 513/15(a) (genetic testing information shall not be "admissible as evidence, nor discoverable in any action of any kind in any court, or before any tribunal, board, agency, or person"); *id.* ("No liability shall attach to any hospital, physician, or other health care provider for compliance with the provisions of this Act"). The statute focuses squarely on entities that possess genetic information—which GIPA prohibits from disclosing, voluntarily or under compulsion—not those seeking to obtain it. Nowhere does the statute permit the subject of genetic testing to bring a damages suit against a person or entity, like law enforcement, that demands to see such information.

## II. The GIPA Claim is Untimely.

Plaintiff's GIPA claim against Meta fails anyway because it is untimely. Illinois law sets a one-year limitations period for claims involving "publication of matter violating the right of privacy." 735 ILCS 5/13-201. GIPA was enacted "to protect the privacy of individuals' genetic testing information." Compl. ¶¶ 6, 8, 39; *see* 410 ILCS 513/5, 513/31.10 (protecting "health information privacy"). In *Tims v. Black Horse Carriers, Inc.*, the Illinois Supreme Court explained that the one-year limitations period would apply to a statute that makes it a violation to profit from or "disclose," "redisclose," or "disseminate" confidential information without consent. 2023 IL 127801, ¶ 32 (2023). GIPA fits that bill. The court in *Tims* distinguished that kind of statute from one that, unlike GIPA, regulates confidential information in numerous other ways, such as "the collection, use, safeguarding, handling, storage, retention, and destruction" of information. *Id.* ¶¶ 5, 24, 27.

Plaintiff alleges that she uploaded her information to GEDmatch in 2021. Compl. ¶ 71. But

she did not bring her claim until *2024*, well outside the limitations period. That forecloses her claim.

## III. Plaintiff Agreed to Apply California Law.

Plaintiff's sole claim, premised on GIPA, fails because it is foreclosed by the choice-of-law provision in Meta's Terms of Service. Courts have routinely enforced that provision to bar out-of-state claims by Facebook users. *E.g.*, *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1055–57 (N.D. Cal. 2018) (dismissing New York law claim based on Facebook's choice-of-law clause); *Palomino v. Facebook, Inc.*, 2017 WL 76901, at *3–4 (N.D. Cal. Jan. 9, 2017) (same for New Jersey law claim); *see also, e.g.*, *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 934–35 (N.D. Cal. 2018) (dismissing claims under laws of other states based on Google's choice-of-law clause). This Court should follow suit.

All Meta users must agree to Meta's Terms of Service when they sign up for an account. *See* RJN Ex. 2 at 1; *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1084 n.8 (N.D. Cal. 2023). At all relevant times, Meta's Terms—which are subject to judicial notice, *see* RJN Exs. 2, 6, 7—have included a clear California choice-of-law clause. Meta and each user "agree . . . that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions." RJN Ex. 2 at 9; *see also* RJN Exs. 6, 7. That choice-of-law clause controls here.

"California has a strong policy favoring enforcement of choice-of-law provisions." *Palomino*, 2017 WL 76901, at *3 (quotation marks omitted). If "the chosen state has a substantial relationship to the parties or their transaction," or if a "reasonable basis otherwise exists for the choice of law," the provision "generally will be enforced." *Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 917 (2001). An exception applies only when "application of California law would violate [a] fundamental" policy of a state with a materially greater interest in the determination of the issue. *Palomino*, 2017 WL 76901, at *3; *see Wash. Mut. Bank*, 24 Cal. 4th at 917; *Williams*, 384 F. Supp. 3d at 1056.

As other courts have done, this Court should enforce the choice-of-law provision here under those principles. California has an "obvious substantial relationship to the parties and a reasonable basis to enforce its choice of law considering Facebook is a California corporation with its principal place of business located at Menlo Park, California." *Williams*, 384 F. Supp. 3d at 1056 (quotation

marks omitted). Nor would applying California law violate any fundamental policy of Illinois. California, like Illinois, has robust privacy protections. *See, e.g.*, Cal. Civ. Code § 56.181 (genetic-privacy statute). This case is therefore unlike those where courts have declined to enforce choice-of-law clauses out of concern that California law lacked protections comparable to other States. *See, e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1168–70 (N.D. Cal. 2016). That another State's laws might "afford[] different rights and remedies" is not a legally sufficient basis to refuse to enforce the parties' contractually agreed choice of law. *Palomino*, 2017 WL 76901, at *4; *see Williams*, 384 F. Supp. 3d at 1056.

## CONCLUSION

The Court should dismiss the complaint with prejudice.

DATED: July 10, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Defendant Meta Platforms, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: July 10, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman