**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

**COOLEY LLP**
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

PHYLLIS NICHOLS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

CASE NO. 4:24-cv-02914-JSW

**DEFENDANT META PLATFORMS, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS**

Date: October 11, 2024
Time: 9:00 a.m.
Videoconference

Action Filed: April 9, 2024
Honorable Jeffrey S. White

Gibson, Dunn & Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Evidence 201(b), defendant Meta Platforms, Inc. ("Meta"), through its undersigned counsel, respectfully requests that the Court take judicial notice of, and/or deem as incorporated by reference, the following exhibits, filed in support of its motion to dismiss, which are attached to the accompanying Declaration of Abigail A. Barrera.

**Meta Policies In Effect on January 1, 2021**

**Exhibit 1** is a true and correct copy of Meta's Business Tools Terms dated August 31, 2020, available on the Internet Archive: https://web.archive.org/web/20201030175919/https://www.facebook.com/legal/technology_terms.

**Exhibit 2** is a true and correct copy of Meta's Terms of Service dated October 22, 2020, available on the Internet Archive: https://web.archive.org/web/20201102213654/https://www.facebook.com/legal/terms/plain_text_terms.

**Exhibit 3** is a true and correct copy of Meta's Commercial Terms dated August 31, 2020, available on the Internet Archive: https://web.archive.org/web/20210102223029/https://www.facebook.com/legal/commercial_terms.

**Exhibit 4** is a true and correct copy of Meta's Data Policy (now called the Privacy Policy) dated August 21, 2020, available on the Internet Archive: https://web.archive.org/web/20200912215824/https://www.facebook.com/about/privacy/update/printable.

**Subsequent Versions of Meta Policies**

*Business Tool Terms*

**Exhibit 5** is a true and correct copy of Meta's current Business Tools Terms dated April 25, 2023, available at Meta's website: https://www.facebook.com/legal/terms/businesstools.

*Terms of Service*

**Exhibit 6** is a true and correct copy of Meta's Terms of Service dated January 4, 2022, available on the Internet Archive: https://web.archive.org/web/20220306022455/https://www.facebook.com/legal/terms/.

**Exhibit 7** is a true and correct copy of Meta's current Terms of Service dated July 26, 2022, available on Meta's website: https://www.facebook.com/legal/terms/plain_text_terms.

*Commercial Terms*

**Exhibit 8** is a true and correct copy of Meta's Commercial Terms dated September 27, 2021, available on the Internet Archive: https://web.archive.org/web/20211003052757/https://www.facebook.com/legal/commercial_terms.

**Exhibit 9** is a true and correct copy of Meta's current Commercial Terms dated March 6, 2024, available at Meta's website: https://www.facebook.com/legal/commercial_terms.

*Data Policy (Now Called the Privacy Policy)*

**Exhibit 10** is a true and correct copy of Meta's Data Policy (now called the Privacy Policy) dated January 11, 2021, available on the Internet Archive: https://web.archive.org/web/20210715005449/https://www.facebook.com/about/privacy/update/printable.

**Exhibit 11** is a true and correct copy of Meta's Data Policy (now called the Privacy Policy) dated January 4, 2022, available on Meta's website: https://www.facebook.com/about/privacy/update/printable.

**Exhibit 12** is a true and correct copy of Meta's Privacy Policy dated July 26, 2022, available on Meta's website: https://mbasic.facebook.com/privacy/policy/printable/version/5066055233450651/.

**Exhibit 13** is a true and correct copy of Meta's Privacy Policy dated January 1, 2023, available on Meta's website: https://mbasic.facebook.com/privacy/policy/printable/version/5407378522724295/.

**Exhibit 14** is a true and correct copy of Meta's Privacy Policy dated June 15, 2023, available on Meta's website: https://mbasic.facebook.com/privacy/policy/printable/version/5601719079934335/.

**Exhibit 15** is a true and correct copy of Meta's Privacy Policy dated December 27, 2023, available on Meta's website: https://mbasic.facebook.com/privacy/policy/printable/version/7122790421067234/.

**Exhibit 16** is a true and correct copy of Meta's current Privacy Policy dated June 26, 2024, available on Meta's website: https://mbasic.facebook.com/privacy/policy/printable/.

**Websites**

**Exhibit 17** is a true and current copy of a webpage on GEDmatch's website titled *Is GEDmatch Safe?*: https://www.gedmatch.com/privacy-security/.

**Exhibit 18** is a true and correct copy of a webpage on Meta's website titled *About Standard and Custom Webpage(s) Events*: https://www.facebook.com/business/help/964258670337005?id=1205376682832142.

**ARGUMENT**

In ruling on a motion to dismiss, the Court may look beyond the four corners of the complaint to matters subject to judicial notice and documents incorporated in the complaint by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Meta respectfully requests that this Court take judicial notice of public records available on publicly available websites (Exhibits 1–18). Meta additionally requests that the Court deem Exhibits 1, 3, 17, and 18 incorporated by reference because plaintiff's complaint refers to and depends on the contents of these documents.

**A. Materials From Public Websites**

The Court may take judicial notice of exhibits 1–18 under Federal Rule of Evidence 201 because they are available on publicly available websites and the contents are not subject to reasonable dispute. *See* Fed. R. Evid. 201. Courts in this district routinely take judicial notice of websites and their contents, including publicly available contracts and terms of service. *See, e.g.*, *Carvalho v. HP, Inc.*, 2022 WL 2290595, at *1 n.1 (N.D. Cal. June 24, 2022) (public webpage); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1068–69 & n.3 (N.D. Cal. 2016) (privacy policies); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1025 (N.D. Cal. 2014) (privacy policies); *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010) (terms of use); *see also Matthews v. Nat'l Football League Mgmt.*, 688 F.3d 1107, 1113 (9th Cir. 2012) (taking judicial notice of fact posted on public webpage).

**B. Materials Incorporated By Reference**

The Court may also take judicial notice of Exhibits 1 (Meta's Business Tools Terms), 3 (Meta's

Commercial Terms), 17 (a webpage on GEDmatch's website), and 18 (a webpage on Meta's website) under the incorporation-by-reference doctrine. Under the incorporation-by-reference doctrine, a district court may, when ruling on a motion to dismiss, consider documents outside the complaint when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *accord Lee*, 250 F.3d at 688–89. This doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002; *see also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014).

Exhibits 1, 3, 17, and 18 satisfy this standard. Plaintiff refers (selectively) to the webpages at Exhibits 17 and 18 in her Complaint, *see, e.g.*, Compl. ¶¶ 45, 50 & nn.15, 16, 17, and refers to Meta's Business and Commercial Tools throughout her complaint, making representations about what disclosures they do and do not contain by repeatedly referencing a "contract" or "agreement" between Meta and GEDmatch, *see, e.g.*, Compl. ¶¶ 3, 20, 46–55, 57–61, 75, 95. Further, these documents—and what they do and do not contain—"form[] the basis" of plaintiff's claim that Meta compelled disclosure of her private information. *See, e.g.*, *Knievel*, 393 F.3d at 1076–77 (incorporating web pages related to specific representations cited in the complaint). Because these documents are "central to the plaintiff's claim" and "no party questions the authenticity of the copy attached to" this request, it is plainly subject to the incorporation-by-reference doctrine. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see, e.g.*, *Varlack v. Ohio Sec. Ins.*, 2022 WL 17248997, at *1 (N.D. Cal. Nov. 28, 2022); *UAB "Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223, at *2 n.2 (N.D. Cal. Nov. 21, 2019); *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1242 (N.D. Cal. 2017).

Consideration of these documents serves the core purpose of the incorporation-by-reference doctrine. Here, plaintiff's complaint refers to "only portions of documents that support [her] claim[], while omitting portions of those very documents that weaken—or doom—[her] claim[]." *Khoja*, 899 F.3d at 1002; *see also Perkins*, 53 F. Supp. 3d at 1204. For example, plaintiff asserts that Meta "encourages and promotes entities and website owners, such as GEDmatch, to utilize 'Business Tools'

to gather, identify, target, and market products and services to individuals," Compl. ¶ 48, and that Meta's "contracts" with web developers that use the Meta Business Tools somehow "compelled" GEDmatch to disclose information to Meta. Compl. ¶¶ 20, 95; *see also, e.g.*, *id.* ¶¶ 46, 57. But the Business Tools Terms governing these "contracts" confirm what plaintiff already admits. The Business Tools Terms detail the process through which developers *choose* which information they want to send to Meta. Meta's policies show that GEDmatch chose whether and how to use Meta's Pixel tool; Meta did not "compel" anything. As the central theory of plaintiff's complaint is that Meta "compelled" disclosure of plaintiff's genetic testing information, the full text of these documents is essential for consideration of plaintiffs' claims.

**CONCLUSION**

Under the incorporation-by-reference doctrine and Federal Rule of Evidence 201, and for the reasons stated above, the Court should consider Exhibits 1 through 18 to the accompanying Barrera Declaration when ruling on Meta's motion to dismiss.

DATED: July 10, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

*Attorney for Defendant Meta Platforms, Inc.*

DATED: July 10, 2024

Respectfully submitted,

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorney for Defendant Meta Platforms, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: July 10, 2024

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
Lauren R. Goldman